﻿Citation Nr: AXXXXXXXX
Decision Date: 02/22/19 Archive Date: 02/21/19

DOCKET NO. 180904-696
DATE: February 22, 2019

ORDER

Entitlement to an effective date prior to June 25, 2015 for the assignment of a separate 10 percent rating for painful scar, right posterior chest is denied.

Entitlement to an effective date prior to June 25, 2015 for the assignment of a separate 10 percent rating for painful scar, right buttock is denied.

Entitlement to an initial compensable rating for peripheral nerve impairment of T5 distribution of chest wall, long thoracic nerve (claimed as right arm nerve damage and limited motion of right arm), associated with residuals stab wound, right posterior chest (peripheral nerve disability), from February 8, 2016, and a rating higher than 30 percent from June 19, 2017 is denied.

FINDINGS OF FACT

1. The Veteran’s entitlement to separate 10 percent ratings for painful scars of the right posterior chest and right buttock did not arise during the one-year period prior to June 25, 2015. 

2. From February 8, 2016, to June 19, 2017, the Veteran’s peripheral nerve disability manifested with no more than mild, incomplete paralysis of the long thoracic nerve.

3. Since June 19, 2017, the Veteran’s peripheral nerve disability manifested with no more than complete paralysis of the long thoracic nerve.

CONCLUSIONS OF LAW

1. The criteria for establishing entitlement to an effective date prior to June 25, 2015 for the assignment of a separate 10 percent rating for painful scar of the right posterior chest have not been met. 38 U.S.C. §§ 5103, 5103A, 5107, 5110; 38 C.F.R. § 3.400.

2. The criteria for establishing entitlement to an effective date prior to June 25, 2015 for the assignment of a separate 10 percent rating for painful scar of the right buttock have not been met. 38 U.S.C. §§ 5103, 5103A, 5107, 5110; 38 C.F.R. § 3.400.

3. From February 8, 2016, to June 19, 2017, the criteria for assignment of an initial compensable rating for peripheral nerve disability have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.124a, Diagnostic Code (DC) 8519.

4. Since June 19, 2017, the criteria for assignment of a rating higher than 30 percent peripheral nerve disability have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.124a, DC 8519.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program. 

The Veteran served on active duty from September 1961 to August 1963. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the July 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

In an October 2015 notice of disagreement (NOD), the Veteran raised the issue of whether the RO committed a clear and unmistakable error (CUE) in a February 1986 rating decision granting the Veteran entitlement to service connection with noncompensable disability ratings for stab wound residuals of the right buttock and right posterior chest. Absent a specific adjudication of a CUE claim by the RO, the Board finds that it cannot take jurisdiction of the matter. 

Earlier Effective Date

An October 2015 rating decision granted separate 10 percent ratings for painful scars of the right buttock and right posterior chest, effective June 25, 2015. This was the date of the Veteran’s claim for increased ratings for his stab wound residuals of the right posterior chest and right buttock. 

The Veteran seeks an effective date prior to June 25, 2015, for the assignment of the separate 10 percent ratings for painful scars of the right buttock and right posterior chest.

Generally, the effective date of an award of compensation based on an original claim, a claim reopened after a final disallowance, or a claim for increase will be the date of receipt of the claim, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

Regarding a claim for an increased rating, if the increase is factually ascertainable within one year prior to the receipt of the claim, the rating will be effective as of the date of increase. If the increase occurred more than one year prior to receipt of the claim, the rating will be effective as of the date of the claim. If the increase occurred after the date of the claim, the rating will be effective as of the date of increase. 38 U.S.C. § 5110(b)(2) (2012); Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. § 3.400(o)(1), (2); VAOPGCPREC 12- 98 (1998), 63 Fed. Reg. 56704 (1998). 

VA amended its adjudication regulations on March 24, 2015, to require that all claims governed by VA’s adjudication regulations be filed on standard forms prescribed by the Secretary, regardless of the type of claim or posture in which the claim arises. See 79 Fed. Reg. 57660 (Sept. 25, 2014). The amendments, however, are only effective for claims and appeals filed on or after March 24, 2015. As the claims in this case were filed after that date, the amendments are applicable in this instance and the regulations in effect on March 24, 2015, will be applied.

The Veteran filed a reopened claim for service connection for residual stab wounds of the right posterior chest and right buttock in May 7, 1984. A February 1986 rating decision established service connection for these conditions, and assigned noncompensable ratings. The Veteran did not appeal any aspect of the decision, including the rating, which was based, in part, on the effect of the scars of the right posterior chest and right buttock. Therefore, the decision is final. 38 U.S.C. § 7105(c); 38 C.F.R. §§ 3.104(a), 3.160(d), 20.302, 20.200, 20.1103.

In November 1990, the Veteran filed a claim for increased ratings for his service-connected residual stab wounds of the right posterior chest and right buttock; however, a June 1991 rating decision continued the noncompensable ratings. This decision, too, is final. Id.

The RO did not receive any further correspondence or other evidence from the Veteran, including any correspondence referring to the residual stab wounds, until June 25, 2015, when he requested an increased rating for residual stab wounds. That is therefore the date of the claim at issue in this appeal.

The question remaining is when, prior to or after June 25, 2015, the painful scars of the right posterior chest and right buttock, manifested, entitling the Veteran to separate ratings for painful scars. 

The Veteran alleges that painful scars initially manifested during an April 1985 VA examination, which documented intermittent pain at the site of his stab wounds and right leg numbness and, thus, the 10 percent ratings should be assigned an effective date of May 7, 1984 (i.e., the date of his reopened claim for service connection for stab wound residuals of the right buttock and right posterior chest).

The record, including the service medical records, does not show any treatment for scars. However, an April 1985 VA examination noted that both scars were healed and non-adherent. Although the Veteran complained of pain in the areas of his stab wounds and “pins and needles” sensation on the right leg, the examiner determined that his sensory status was “inconsistent.” The RO acknowledged the scars and the VA examiner’s findings thereto in February 1986 and June 1991. Thereafter, the record indicates the Veteran’s scars were not evaluated until an October 2015 VA examination.

The Veteran’s painful scars of the right posterior chest and right buttock manifested more than one year prior to June 25, 2015, rather than during the year extending from June 25, 2014 to June 24, 2015. It is not alleged or shown that there was an increase in severity of the scars during this one year period. Thus, an effective date prior to June 25, 2015, may not be assigned for the separate 10 percent ratings for painful scars of the right posterior chest and right buttock. Instead, the date of claim controls. That date in this case is June 25, 2015, the date of receipt of the increased rating claim, for residuals of right buttock and right posterior wounds. 38 U.S.C. § 5110(b)(2) (2012); Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. § 3.400(o)(1), (2); VAOPGCPREC 12- 98 (1998).

In sum, the presently assigned effective date of June 25, 2015, is appropriate and there is no basis for the assignment of separate 10 percent ratings for painful scars of the right posterior chest and right buttock prior to that date. As the preponderance of the evidence is against the claim, the claim must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Increased Ratings

Disability ratings are determined by the application of the VA’s Schedule for Rating Disabilities. Separate diagnostic codes identify the various disabilities, which are based, as far as practically can be determined, on average impairment in earning capacity. 38 U.S.C. § 1155; 38 C.F.R. Part 4. When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). The Board will also consider entitlement to staged ratings to compensate for times since filing the claims when the disabilities may have been more severe than at other times during the course of the claims on appeal. Fenderson v. West, 12 Vet. App. 119 (1999).

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran’s peripheral nerve disability is rated as 0 percent disabling, from February 8, 2016 under DC 8519, and 30 percent disabling, from June 19, 2017 under DC 5201-8519.

Hyphenated diagnostic codes are used when a rating under one code requires use of an additional diagnostic code to identify the basis for the rating assigned. 38 C.F.R. § 4.27.

Under DC 5201, limitation of motion of the major arm is rated as 20 percent disabling when motion is limited to shoulder level. 38 C.F.R. § 4.71a, DC 5201. A 30 percent rating is assigned when motion of the major arm is limited to midway between side and shoulder level. A maximum 40 percent rating is assigned when motion of the major arm is limited to 25 degrees from the side. Id.

Under DC 8519, a maximum schedular rating of 30 percent is warranted for complete paralysis of the long thoracic nerve affecting the major extremity. 38 C.F.R. § 4.124a, DC 8519. With complete paralysis, there is an inability to raise the arm above shoulder level and a winged scapula deformity. When there is incomplete paralysis, a 20 percent rating is in order for severe disability affecting either the major or minor extremity. Moderately incomplete paralysis affecting either the major or minor extremity warrants a 10 percent evaluation. Mild incomplete paralysis affecting either the major or minor extremity warrants a noncompensable evaluation. Id. 

Words such as “moderate” and “severe” are not defined in the Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to ensure that its decisions are “equitable and just.” 38 C.F.R. § 4.6. Use of terminology such as “severe” by VA examiners and others, although evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.

In rating peripheral nerve injuries and their residuals, attention must be given to the site and character of the injury, the relative impairment of motor function, trophic changes, and/or sensory disturbances. 38 C.F.R. § 4.120. The term “incomplete paralysis” indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a.

Turning to the evidence, the Veteran filed an increased ratings claim for residuals of stab wounds of the right posterior chest and right buttock. He alleged nerve damage to the right arm and limited motion of the right arm as a result of his stab wound to the right posterior chest.

During an August 2016 peripheral nerves conditions disability benefits questionnaire (DBQ), the examiner noted the Veteran’s pain and dysesthesias of the posterior chest along the T5 nerve root. The Veteran reported numbness, “pins and needles” sensation, and pain, especially with lifting above chest level. Upon examination, the examiner determined that the Veteran had symptoms of mild, incomplete paralysis of the right long thoracic nerve. Additionally, hyperesthesia and pain with light touch that included guarding behavior with sensory testing of the T5 nerve dermatomal distribution in the thoracic spine.

In November 2016, the Veteran submitted a private back (thoracolumbar spine) conditions DBQ indicating the Veteran had limited use of the right upper extremity due to right T5-6 radicular pain syndrome. No measurements of the Veteran’s right shoulder range of motion were noted.

A June 2017 shoulder and arms conditions DBQ documented T5 radicular symptoms of the right upper extremities. The Veteran reported inability to lift or hold things on the right side, as well as difficulty getting dressed. Upon examination, abduction was limited to 35 degrees and flexion was limited to 60 degrees with tenderness, as well as pain that caused functional loss. Abduction was limited to 35 degrees and flexion was limited to 40 degrees on repetitive use. Muscle strength was 3/5, and some atrophy of the right upper extremity was noted. The examiner determined that the Veteran had nerve pain/dysthesias in the T5 dermatomal distribution pattern, which was the likely nerve injured during his in-service stab wound.

Based on the foregoing, the evidence shows that for the period from February 8, 2016, the Veteran’s peripheral nerve disability did not manifest as moderate, incomplete paralysis. Thus, a higher 10 percent disability rating under DC 8519 is not warranted during that time period. The Board notes that despite the Veteran’s pain, numbness, and sensitivity with guarding, the August 2016 VA examiner found the Veteran had symptoms of only mild, incomplete paralysis of the right long thoracic nerve. The private November 2016 DBQ, submitted by the Veteran, indicates that the Veteran’s peripheral nerve disability severely limited range of motion of his right upper extremity, but does not provide comment on the degree of paralysis of the right long thoracic nerve or the degree of range of motion limitation of the right upper extremity.

The Veteran is in receipt of the maximum schedular rating for peripheral nerve disability under DC 8519 (i.e., a 30 percent rating), which is representative of complete paralysis of the long thoracic nerve, since June 19, 2017. Thus, this is the maximum rating allowable and a higher rating is not warranted under DC 8519. 

The Board notes that no higher rating is available under DC 5201, as there is no evidence that the right upper extremity was limited to 25 degrees from the side, since June 19, 2017. 38 C.F.R. § 4.71a, DC 5201. 

As the weight of the evidence is against a compensable disability rating for peripheral nerve disability from February 8, 2016, to June 19, 2017, and a rating higher than 30 percent thereafter, the increased disability rating requests must be denied.

 

M. H. HAWLEY

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD A. Norwood, Associate Counsel